UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN WELL CORPORATION, | ) )  ) |
| Plaintiff, | ) ) |
| | ) Civil Action No. 24-CV-10226-AK |
| v. | ) ) |
| INDEGENE LIMITED, | ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION AND
INSUFFICIENT SERVICE OF PROCESS**

**ANGEL KELLEY, D.J.**

Plaintiff American Well Corporation ("Amwell"), a Boston-based company that offers software and application platforms, brings this action against Defendant Indegene Limited, an India-based company. Plaintiff alleges that Defendant breached a contract it had with it when Defendant failed to pay an annual subscription fee for the configuration and development of a medical adherence program. Defendant moves to dismiss this action, pursuant to Federal Rule of Civil Procedure 12(b), for lack of personal jurisdiction and insufficient service of process. [Dkt. 10]. For the following reasons, Defendant's motion [10] is **GRANTED**.

**I.     BACKGROUND**

Amwell is a privately held Delaware corporation with its corporate headquarters and principal place of business in Massachusetts. [Dkt. 1 at ¶ 1]. Amwell develops and maintains software and application platforms for the provision of telehealth services. [Id. at ¶ 6]. Amwell's subsidiaries include Conversa Health LLC ("Conversa"). [Id. at ¶ 7]. Conversa is a

1

company that provides automated virtual healthcare services and is incorporated in Delaware. [Dkt. 26 at 10]. Conversa was previously headquartered in Oregon, but Plaintiff states that Conversa's principal place of business was moved to Boston after it was acquired by the Plaintiff. [Dkt. 20 at 17].[1]

Indegene Limited is an Indian company with its principal place of business in Bengaluru, India. [Dkt. 1 at ¶ 2]. Indegene Limited offers research and development and management services to healthcare and pharmaceutical companies. [Id. at ¶ 8]. Defendant does not and has never had any offices, employees, property, or agents in Massachusetts, nor are they licensed to do business in the Commonwealth. [Dkt. 12 at ¶¶ 4-14]. Defendant does not actively solicit customers in Massachusetts. [Id. at ¶ 13].

On or about December 23, 2021, Indegene Limited and Amwell, on behalf of itself and its subsidiaries, including Conversa, entered into a Partner Agreement (the "Partner Agreement"). According to the Partner Agreement, Indegene Limited could offer its customers a license to use a variety of Conversa consulting, support, and ancillary services. [Dkt. 1 at ¶¶ 9, 12]. The Partner Agreement also appointed a non-exclusive, non-transferable license and right to use, market, resell and distribute the Conversa services in the United States. [Id. at ¶ 11].

On or about December 23, 2021, the parties also entered into Service Order #1 as part of the Partner Agreement. [Id. at ¶ 13]. The subscription term of Service Order #1 was for 12 months with a start date of December 23, 2021 and an annual subscription fee of $250,000. [Id. at ¶ 14]. According to Service Order #1, 50% of the annual subscription fee was payable on March 1, 2022, and the remaining 50% of the fee was payable on July 1, 2022. [Id. at ¶ 15]. Per

---

[1] Under the prima facie standard, the Court gives credence to plaintiff's version of genuinely contested facts. See Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016).

the Partner Agreement, Defendant was required to pay all fees within 30 days following their receipt of an electronically submitted invoice. [Id. at ¶ 16].

On or about July 12, 2023, Defendant's Global General Counsel and Chief Compliance Officer Karthik Kannappan informed Plaintiff that they would not complete payment of the two invoices for the annual subscription fees. [Id. at ¶ 21]. On or about November 13, 2023, Plaintiff's Senior Vice President and General Counsel Bradford Gay advised Defendant that the Partner Agreement would terminate on December 14, 2023 because of Defendant's failure to pay the subscription fees. [Id. at ¶ 22]. No payments have been made to Plaintiff. [Id. at ¶ 23]. No Conversa services or products were rendered to Defendant. [Id. at 13-14].

On January 29, 2024, Amwell filed the complaint at issue against Indegene Limited seeking damages of no less than $250,000 for Defendant's alleged breach of contract. [Id.]. Defendant moved to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and insufficient service of process under Federal Rule of Civil Procedure 12(b)(5). [Dkt. 10].

## II. LEGAL STANDARD

### A. Personal Jurisdiction

When personal jurisdiction is contested, the plaintiff has the "ultimate burden of showing by a preponderance of the evidence that jurisdiction exists." Vapotherm, Inc. v. Santiago, 38 F.4th 252, 257 (1st Cir. 2022) (quoting Adams v. Adams, 601 F.3d 1, 4 (1st Cir. 2010)). When the Court assesses its jurisdiction without an evidentiary hearing, the prima facie standard applies. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002). Under the standard, the plaintiff should "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." Baskin-Robbins Franchising LLC v.

Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016).  The Court reviews the pleadings, supplemental filings in the record, and undisputed facts provided by the defendant, giving credence to plaintiff's version of genuinely contested facts.  Id.  While the plaintiff's burden of proof is "light," it nevertheless requires them not to rely on "mere allegations" alone but to point to specific facts in the record that support their claims.  Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 8 (1st Cir. 2002) (citing Daynard, 290 F.3d at 51).  The Court "'must accept the plaintiff's (properly documented) evidentiary proffers as true' . . . irrespective of whether the defendant disputes them" for the purposes of the motion.  Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007) (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)).  The Court is to view these facts in the light most favorable to the plaintiff's jurisdictional claim.  Mass. Sch. of Law v. ABA, 142 F.3d 26, 34 (1st Cir. 1998).  The defendant may also offer evidence, but the evidentiary proffers of the defendant "become part of the mix only to the extent that they are uncontradicted."  Adelson, 510 F.3d at 48 (citing Mass. Sch. of Law, 142 F.3d at 34); see Baskin-Robbins, 825 F.3d at 34 ("We may, of course, take into account undisputed facts put forth by the defendant.").

      **B.  Service**

When the sufficiency of process is challenged under Federal Rule of Civil Procedure 12(b)(5), plaintiff bears "the burden of proving proper service."  Rivera-Lopez v. Municipality of Dorado, 979 F.2d 885, 887 (1st Cir. 1992).  Federal Rule of Civil Procedure 4 ("Rule 4") sets forth the acceptable methods by which service of process can be effectuated.  It permits service upon a foreign corporation in various ways including "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention."  Fed. R. Civ. P. 4(f)(1).  The Court may dismiss a complaint for insufficient service

4

of process.  Evans v. Staples, Inc., 375 F. Supp. 3d 117, 120 (D. Mass. 2019).  However, it also "has broad discretion to either dismiss a complaint" or in instances when "there exists a reasonable prospect that service may yet be obtained" to "quash service of process."  Cutler Assocs. v. Palace Constr., LLC, 132 F. Supp. 3d 191, 194 (D. Mass. 2015) (quoting DiDonato v. Mosher, 1996 Mass. App. Div. 135, 136 (Mass. App. 1996)).

### III.  Discussion

#### A.  Personal Jurisdiction

When determining whether a nonresident defendant is subject to its jurisdiction, "a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state."  Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995) (internal quotes omitted).  As such, in a diversity case like this one, Plaintiff "must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment."  C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014) (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)).  While this Circuit has sometimes treated Massachusetts' long-arm statute as coextensive with the Due Process Clause, the long-arm statute can impose more restrictive limits.  Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016).  The Court discusses each in turn.

#### 1. Long-Arm Statute

The Massachusetts long-arm statute lists several circumstances that give rise to personal jurisdiction, including "from the person's . . . transacting any business in this [C]ommonwealth." Mass. Gen. Laws ch. 223A, § 3 ("Section 3A").  Section 1 of the statute defines "person" to include corporations like Indegene Limited.  Mass. Gen. Laws ch. 223A, § 1.  Courts have interpreted "transacting any business in this [C]ommonwealth" to indicate that (1) "the defendant

5

must have transacted business in Massachusetts" and (2) "the plaintiff's claim must have arisen from the transaction of business by the defendant." Baskin-Robbins, 825 F.3d at 34 n.3 (quoting Tatro v. Manor Care, Inc., 625 N.E.2d 549, 551 (Mass. 1994)). Courts in this Circuit have regularly construed this language broadly and thus this Court looks to whether the Defendant "attempted to participate in the [C]ommonwealth's economic life." See Cossart v. United Excel Corp., 804 F.3d 13, 18 (1 Cir. 2015) (quotation omitted); see also Hahn v. Vermont Law School, 698 F.2d 48, 50 (1st Cir. 1983) (finding that "transacting any business" is not strictly limited to commercial activity). However, "isolated transactions unaccompanied by 'purposeful intent' on the part of [a] defendant[] and having only a 'slight effect on the commerce of the Commonwealth' are not enough to support jurisdiction" under Section 3A. Sun Life Assurance Co. of Canada v. Sun Bancorp, Inc., 946 F. Supp. 2d 182, 188 (D. Mass. 2012) (additional quotations and internal citation omitted); see Roberts v. Legendary Marine Sales, 857 N.E.2d 1089, 1091-92 (2006) (holding that the sale of a single boat by a Florida dealership to a Massachusetts buyer did not amount to "transacting any business" in Massachusetts because it was an isolated transaction).

Plaintiff argues that Defendant transacted business in Massachusetts by "repeatedly participat[ing] in the Commonwealth's economic life" through Indegene Inc., Defendant's wholly owned domestic subsidiary and non-party to this action. [Dkt. 20 at 16]. According to Plaintiff, Indegene Inc. "acted as the agent and/or alter ego of [Defendant] with respect to the Amwell relationship" and in turn, Indegene Limited through this "domestic alter ego" entered into "a series of three contracts with a Massachusetts company." [Id. at 11, 17]. However, under Massachusetts law, there is a presumption of corporate separateness which "may be overcome only 'in rare particular situations in order to prevent gross inequity.'" Platten v. HG Berm.

Exempted Ltd., 437 F.3d 118, 128 (1st Cir. 2006) (quoting My Bread Baking Co. v. Cumberland Farms, Inc., 233 N.E.2d 748, 752 (Mass. 1968)).  While Indegene Inc., headquartered in New Jersey, is a wholly owned subsidiary of Indegene Limited, it is an "entirely separate and distinct corporate entity" from Defendant with its own separate "bank accounts, books and records" generating "its own revenue and working capital." [Dkt. 11 at 11].  As such, when determining whether it can disregard corporate form and pierce the corporate veil, this Court must examine a series of factors in its analysis of the extent of the corporate interrelationship between Indegene Inc. and Indegene Limited:

> "(1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud."

Attorney Gen. v. M.C.K., Inc., 736 N.E.2d 373, 380 n.19 (Mass. 2000) (citing Pepsi-Cola Metropolitan Bottling Co. v. Checkers, Inc., 754 F.2d 10, 14-16 (1st Cir. 1985)).  No one factor or combination of factors is determinative and there is a very high burden for Plaintiff to meet for the Court to ignore corporate form.  See TechTarget, Inc. v. Spark Design, LLC, 746 F. Supp. 2d 353, 357 (D. Mass. 2010) (a numerical imbalance of the factors is not determinative because the factors are weighted, not counted); Commonwealth Aluminum Corp. v. Baldwin Corp., 980 F. Supp. 598, 605 (D. Mass. 1997) ("[P]laintiffs 'must meet a very high standard' before they will be allowed to disregard a corporate form."); see also United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1091 (1st Cir. 1992) ("Under Massachusetts common law, disregarding the corporate form is permissible only in rare situations."); Spaneas v. Travelers Indem. Co., 668 N.E.2d 325, 326 (Mass. 1996) (corporate veil will only be pierced to prevent gross inequity).

In proffering that Indegene Inc. "acted as the agent and/or alter ego of Indegene Limited with respect to the Amwell relationship," Plaintiff does not address the twelve factors the Court must consider in any substantial manner but for a footnote in their responsive brief asserting that there is overlap between Indegene Inc.'s officers and directors and Defendant's directors. [Dkt. 20 at 11, 12]. Neither through the complaint nor any of Plaintiff's affidavits or exhibits do they provide evidence of Defendant exercising pervasive control over Indegene Inc. or creating sufficient intermingling that warrants disregard of the doctrine of corporate separateness. Scott v. NG US 1, Inc., 881 N.E.2d 1125, 1134 (2008). The overlap of employees between Indegene Inc. and Indegene Limited is not enough to indicate an alter ego relationship between Defendant and Indegene Inc. that would allow the Court to exercise personal jurisdiction over Defendant. See Platten, 437 F.3d at 128 (finding that individuals serving "as directors for both a parent and its subsidiary" can be "expected" and does not necessarily constitute confused intermingling or pervasive control needed to show an alter ego relationship); Am. Home Assurance Co. v. Sport Maska, Inc., 808 F. Supp. 67, 73 (D. Mass. 1992) ("That a parent and a subsidiary share common officers, by itself, is not enough to support the alter-ego theory"); Tassinari v. Salvation Army Nat'l Corp., 610 F. Supp. 3d 343, 356 (D. Mass. 2022) ("[T]he evidence of overlapping leadership and common policies does not satisfy the jurisdictional standard without more evidence of overwhelming control"). Because conclusory allegations of alter ego or agency relationship are insufficient, Plaintiff has thus failed to make a prima facie showing that indicates an alter ego relationship exists to permit this Court to overcome corporate form. See Aro Mfg. Co. v. Automobile Body Research Corp., 352 F.2d 400, 403 (1st Cir. 1965).

Plaintiff also argues that Defendant entered into three different agreements with Plaintiff that show sufficient contacts with the forum state to give the Court jurisdiction over Defendant.

According to Plaintiff, the first of these contracts is a Confidentiality Agreement between Amwell and Indegene Inc., dated January 30, 2019, four years prior to the signing of the Partner Agreement. [Dkt. 21 at 5]. This agreement was executed "[i]n connection with a possible business relationship between the parties." [Id.]. The Confidentiality Agreement however is not at issue here. In fact, Plaintiff concedes, and their exhibits show, that Dr. Rajesh Nair signed the agreement in his capacity as President of Indegene Inc., a non-party to this action, on behalf of Indegene Inc. alone. [Id. at 7]. Since the Court finds that Plaintiff has not proffered sufficient evidence of Indegene Inc. being a domestic alter ego of Indegene Limited, the Confidentiality Agreement between Plaintiff and Indegene Inc., signed well before the Partner agreement at issue, is irrelevant to the Court's jurisdictional inquiry.

Plaintiff also argues that the Partner Agreement and Service Order #1 are two separate contracts between Plaintiff and the Defendant. [Dkt. 20 at 17]. However, per Plaintiff, Service Order #1 was "incorporated into the Partner Agreement." [Id. at 8]. Furthermore, the Partner Agreement itself states that the agreement "together with the Attachments hereto constitutes the complete and exclusive agreement between the Parties concerning its subject matter." [Dkt. 11 at 115]. Clause 14.15 of the agreement pertaining to the aforementioned attachments to the Partner Agreement includes "Exhibit 1 – Conversa Services and Pricing" otherwise known as Service Order #1. [Id. at 115, 117]. Therefore, this Court does not find the Partner Agreement and Service Order #1 to be separate agreements and thus separate contacts between the Defendant and the Commonwealth. Furthermore, the Court finds that this isolated transaction between Indegene Limited and the Commonwealth lacks the "purposeful intent" and "effect on the commerce of the Commonwealth" needed to support jurisdiction under Section 3A. Accordingly, Plaintiff has not proffered sufficient evidence that Indegene Inc. is an alter ego of

9

Indegene Limited nor that the Defendant transacted business in Massachusetts. As such, the Court cannot exercise personal jurisdiction over Defendant under the Massachusetts long-arm statute.

### 2. Due Process

While the Court could end its jurisdictional inquiry here since it must "find sufficient contacts between the defendant and the forum to "satisfy *both* [the] state's long-arm statute and the Fourteenth Amendment's Due Process clause," it will nevertheless provide a constitutional analysis. Sawtelle, 70 F.3d at 1387 (emphasis added); see also Sun Life Assurance Co., 946 F. Supp. 2d at 190 ("Because there are insufficient contacts between defendants and the forum state to justify finding personal jurisdiction under the Massachusetts long-arm statute, further constitutional inquiry is unnecessary.")

Even if Plaintiff had satisfied the requirements of the long-arm statute, the Court could not exercise jurisdiction over the Defendant under the Due Process Clause of the Fourteenth Amendment. The Due Process Clause requires that the out-of-state defendant over whom Massachusetts is exercising jurisdiction have sufficient "minimum contacts" with the Commonwealth "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). A federal court may exercise general or specific jurisdiction over a defendant. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). A court can exercise general jurisdiction over a defendant when the defendant has engaged in "continuous and systematic activity" in the forum state, even if the activity in question is unrelated to the suit. United Elec., Radio & Mach. Workers, 960 F.2d at 1088. Here, Plaintiff does not argue that Defendant, nor Indegene Inc. for that matter, is subject to this Court's general jurisdiction. Indegene Limited is

not incorporated in the Commonwealth nor were any of their contacts with Massachusetts "so continuous and systematic as to render [them] essentially at home in the forum State." AG v. Bauman, 571 U.S. 117, 138-39 (2014) (internal punctuation and citation omitted). Therefore, the Court will proceed to the specific jurisdiction analysis.

In order for a court to exercise specific jurisdiction over a defendant, (1) the claim must "relate[] to or arise[] out of the defendant's contacts with the forum"; (2) the contacts must "constitute purposeful availment of the benefits and protections afforded by the forum's laws"; and (3) the exercise of jurisdiction must be reasonable. Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999). Satisfying all three prongs is necessary to establish specific personal jurisdiction. See Motus, LLC v. Cardata Consultants, Inc., 23 F.4th 115, 122 (1st Cir. 2022).

Defendant does not challenge the relatedness of its contacts in Massachusetts to the case at hand and instead focuses its arguments on the lack of purposeful availment. [See Dkt. 11 at 17]. Defendant argues that its contacts "are limited to negotiating and signing a contract with a Massachusetts-based entity," which does not constitute purposeful availment of the privilege of conducting activities within the Commonwealth. [Dkt. 11 at 17]. Plaintiff however asserts that "Indegene Limited and its agent/alter ego entered into three different contractual arrangements with Massachusetts-based Amwell" and that those arrangements "together contemplated a Massachusetts company providing software and services to Defendant over a prolonged period of time." [Dkt. 20 at 19]. As the Court has already found, Plaintiff does not offer evidence permitting the Court to conclude that Indegene Inc., which executed the Confidentiality Agreement, is an alter ego of the Defendant. Additionally, the Court concluded Service Order #1

11

is incorporated into the Partner Agreement. As such, the Court focuses on the Partner Agreement and its attachments in its constitutional analysis of the purposeful availment prong.

Two key factors in determining purposeful availment are voluntariness and foreseeability. C.W. Downer & Co., 771 F.3d at 66. Voluntariness turns on whether the contacts are voluntary rather than being based on the unilateral actions of another party. Vapotherm, 38 F.4th at 261-62 (quoting Adelson, 510 F.3d at 50). This is not an issue here. Foreseeability looks at whether a defendant's contacts in the forum state provide notice to "reasonably anticipate being haled into court there." Id. (quoting World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). Here, Plaintiff focuses its arguments on the foreseeability factor, arguing that "continued entrance in the Commonwealth to transact business and build and supplement its relationship with a Massachusetts company is more than sufficient to find that Defendant purposely availed itself of the privilege of conducting business in Massachusetts." [Dkt. 20 at 19-20].

It is settled in this Circuit that a single agreement alone, such as the Partner Agreement here, rarely constitutes purposeful availment. See Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 933 (1st Cir. 1985) ("[T]he fact that a nonresident enters into a single commercial contract with a resident of the forum state is not necessarily sufficient to meet the constitutional minimum for jurisdiction."); see also Phillips Exeter Acad., 196 F.3d at 290 ("[T]he mere existence of a contractual relationship between an out-of-state defendant and an in-state plaintiff does not suffice, in and of itself, to establish jurisdiction in the plaintiff's home state"); R & B Splicer Sys., Inc. v. Woodland Indus., Inc., No. 12-11081-GAO, 2013 WL 1222410, at *1 (D.

Mass. Mar. 26, 2013) (finding no purposeful availment when "[t]he only 'business' the defendant proposed to 'transact' in Massachusetts was to send payment" for purchased goods.)

In some rare cases, this Circuit has applied a "contract plus" approach when only one contract is at issue and looked to other actions by a defendant that may constitute purposeful availment such as regular visits to the forum state, payment to the plaintiff in the forum state, supervising performance of the plaintiff and other communications.  See Bond Leather Co., 764 F.2d at 933-34.  Plaintiff does not allege that any of Defendant's employees visited the forum state in connection to the negotiation of the Partner Agreement.  Instead, Plaintiff focuses specifically on phone calls and other communications throughout and after the formation of the Partner Agreement between Plaintiff's executives and Indegene Inc. employees located in New Jersey.  [Dkt. 20 at 8].  However, Indegene Inc. is not a party to this suit and Plaintiff has not, as previously stated, proffered sufficient evidence that it is Defendant's alter ego for jurisdictional purposes.  As such, it was not foreseeable that Defendant could be haled to court in Massachusetts given its isolated contacts with the Commonwealth.

The last requirement for exercising specific jurisdiction over a defendant is reasonableness.  Vapotherm, 38 F.4th at 262.  Since Amwell did not make a prima facia showing as to purposeful availment, the Court need not reach the reasonableness analysis.  See id. at 263; see also Motus, 23 F.4th at 122 (relatedness, purposeful availment and reasonableness are all required to establish specific jurisdiction).

### B. Insufficient Service of Process

Although the Court finds that it lacks personal jurisdiction over the Defendant, it will briefly discuss Plaintiff's insufficient service of process claim.

Before a federal court can exercise personal jurisdiction over a defendant, proper service of process must be effectuated. Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987). Rule 4 sets forth the acceptable methods for service of process. Under Rule 4, acceptable methods of serving a corporation not within any judicial district of the United States are the same as any manner prescribed by Rule 4(f) for serving an individual such as "any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." Fed. R. Civ. P. 4(f)(1). Under Massachusetts law, a foreign defendant may also be served through its domestic alter ego. Nasuni Corp. v. ownCloud GMBH, 607 F. Supp. 3d 82, 91 (D. Mass. 2022). Plaintiff bears the burden of proving proper service when a defendant challenges the sufficiency of process under Federal Rule of Civil Procedure 12(b)(5). Rivera-Lopez, 979 F.2d at 887.

Plaintiff Amwell purports that service of process was made on Defendant Indegene Limited in Massachusetts by serving Shaihiem James, a Process Specialist at Corporation Service Company ("CSC"), who Plaintiff asserts is "designated by law to accept service of process on behalf of Indegene Limited." [Dkt. 5 at 2]. Plaintiff argues that serving Indegene Inc. is sufficient service on the Defendant under Massachusetts law by relying on their argument that Indegene Inc. is Defendant's domestic alter ego. [See Dkt. 20 at 10-12]. The Court has

already concluded otherwise.  Consequently, Defendant was not properly served by serving non-party Indegene Inc. through CSC, Indegene Inc.'s registered Massachusetts agent.

Nevertheless, Plaintiff also initiated Hague Convention procedures to serve the Defendant in India and the service request was assembled and mailed to a firm Plaintiff retained in New Delhi on March 21, 2024.  [Dkt. 20 at 10].  The Hague Convention provides means by which to serve process on a foreign national or corporation such as "service through the Central Authority of [a] member state[]."  Burda Media, Inc. v. Viertel, 417 F.3d 292, 300 (2nd Cir. 2005) (citing Hague Convention arts. 5, 6, 8-10); see also Feliz v. United States, 272 F.R.D. 299, 301-02 (D. Mass. 2011).  India has been a signatory to the Hague Convention since 2006.  Tuckerbrook Alt. Invs., LP v. Banerjee, 754 F. Supp. 2d 177, 181 (D. Mass. 2010).  While the Court has not received notice that the Central Authority in New Delhi has served the summons and complaint yet, "there appears to be a reasonable prospect that the plaintiff will ultimately be able to serve the defendant properly."  Golub v. Isuzu Motors, 924 F. Supp. 324, 328 (D. Mass. 1996).  Indeed, at this point of the process, Plaintiff has been diligent in going through the necessary steps within its control to properly effect service in India and the Hague Service Request was delivered to the Central Authority in New Delhi.  [Dkt. 20 at 10]; see Balintulo v. Daimler AG (In re S. African Apartheid Litig.), 643 F. Supp. 2d 423, 433 (S.D.N.Y. 2009) ("Once documents have been properly transmitted to a Hague Convention Central Authority . . . 'the timing of service is out of a plaintiff's control.'").  As such, it would be within the discretion of a Court with jurisdiction to either dismiss Defendant's 12(b)(5) motion without prejudice or to extend the time period to effect service through the Hague proceedings. See United States v. Tobins, 483 F. Supp. 2d 68, 77 (D. Mass. 2007).  Since Plaintiff has initiated the process to serve

15

Defendant in India and there is a reasonable prospect of service, the Court declines to dismiss the case on insufficient service of process grounds.

### C. Transfer and Jurisdictional Discovery

Where a court cannot exercise personal jurisdiction, federal law permits it to transfer a case if it is in the interest of justice to any other such court in which the action could have been brought at the time it was filed. 28 U.S.C. § 1631; see Fed. Home Loan Bank. of Bos. v. Moody's Corp., 821 F.3d 102, 119 (1st Cir. 2016) (holding that Section 1631 authorizes transfer where the transferring court lacks personal jurisdiction), abrogated on other grounds, Lightfoot v. Cendant Mortg. Corp., 580 U.S. 82 (2017). While Section 1631 creates a presumption in favor of transfer should the transfer cure a want of jurisdiction, a plaintiff has the burden of showing jurisdiction exists in the transferee court. Jonson v. FDIC, 877 F.3d 52, 58 (1st Cir. 2017); Plaintiff has failed to do so here. In making a request for a transfer to New Jersey, Plaintiff relies almost entirely on the alter ego theory, a theory that this Court rejects. [Dkt. 20 at 18]. The only relevant evidence Plaintiff offers is that "[t]he Partner Agreement was negotiated on behalf of Indegene [Limited] by Arindam De and executed by Nitin Raizada, both of whom are located [] in New Jersey." [Dkt. 20 at 22]. However, these contacts do not give rise to sufficient "minimal contacts" to establish personal jurisdiction over the Defendant. As such, Plaintiff's request to transfer to New Jersey is denied. See Grynberg v. Ivanhoe Energy, Inc., 490 F. App'x 86, 109 (10th Cir. 2012) (affirming a district's court's denial of Plaintiff's motion to transfer because Plaintiff did not make a showing of personal jurisdiction in the transferee District Court).

Plaintiff in their opposition to Defendant's motion to dismiss also requested that the Court allow jurisdictional discovery for "additional evidence concerning Indegene Inc.'s involvement in executing and performing under the Partner Agreement and Service Order"

should the Court find that it lacks personal jurisdiction. [Dkt. 20 at 21]. While this Court has "broad discretion" to determine whether jurisdictional discovery is warranted, the mere mention of jurisdictional discovery is insufficient to meet Plaintiff's burden. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 626 (1st Circ. 2001). When seeking jurisdictional discovery, Plaintiff has the burden of making "a colorable claim for jurisdiction" and "present facts to the court which show why jurisdiction would be found if discovery were permitted." Id. at 625-26, 627; see also Motus, 23 F.4th at 128 (affirming denial of jurisdictional discovery because plaintiff failed "to explain why jurisdictional discovery was appropriate and what relevant information it hoped to glean through such discovery"). Not only did Plaintiff not explain what specific documents it is seeking, but it did not explain what information it intends to obtain from the limited jurisdictional discovery. ("Amwell requests that it be allowed to conduct limited jurisdictional discovery.") [Dkt. 20 at17]. Accordingly, since Plaintiff has not made any colorable claim, jurisdictional discovery is unwarranted.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss [Dkt. 10] is **GRANTED** and the case is **DISMISSED**.

**SO ORDERED.**

Dated: December 18, 2024                              /s/ Angel Kelley
                                                      Hon. Angel Kelley
                                                      United States District Judge